<u>Not for Publication</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br>　　　　　*Plaintiff*, <br><br>　　v. <br><br>BERNARD OGON, <br><br>　　　　　*Defendant*. | Crim. No. 19-687 <br><br> **OPINION & ORDER** |

**John Michael Vazquez, U.S.D.J.**

　　　　This matter comes before the Court by way of Defendant Bernard Ogon's motion to modify his sentence and for immediate compassionate release. D.E. 40 ("Br."). The Government opposes the motion. D.E. 42 ("Opp."). The Court reviewed the parties' submissions and considered the motions without oral argument pursuant to Local Criminal Rule 1.1 and Local Civil Rule 78.1(b). Defendant seeks immediate release due to mental health issues, long COVID, and impact on his family. For the following reasons, Defendant's motion for compassionate release is denied.

**I.　　BACKGROUND**

　　**A.  Underlying Criminal Proceedings**

　　　On September 15, 2019, Ogon pled guilty to a one-count Information, charging him with a conspiracy to defraud a health care benefit program in violation of 18 U.S.C. § 1349. D.E. 14, 16. Ogon did so pursuant to a written plea agreement, in which he agreed that he caused a loss of more than $9,500,000 but less than $25,000,000. D.E. 16. Ogon, a physician, was part of a health care fraud conspiracy from January 2013 to February 2016. PSR ¶ 27. The conspiracy took advantage of certain insurance plans' payments as to compounded medication, which requires a

pharmacist to mix or alter drug ingredients to create a new medication for a particular patient. *Id.* ¶¶ 15-16, 21-22. The scheme required a number knowing participants: (1) marketing companies, whose representatives found health care beneficiaries whose insurance covered the compounded medications; (2) physicians who would write prescriptions for the compounded medications; and (3) pharmacists who would fill the prescriptions. *Id.* ¶¶ 23-40. As a physician, Ogon's role was to the write the prescriptions, often without seeing the patient (or with incomplete medical information or following a cursory evaluation) and often on preprinted prescription forms, on which the medications were already selected. *Id.* ¶¶ 28-32. Ogon was paid $50 or less for each prescription, obtaining a total of approximately $75,000. *Id.* ¶ 46.

Ogon was sentenced on January 27, 2021 to 33 months imprisonment and over $20 million in restitution. D.E. 31, 33. Ogon faced a United States Sentencing Guidelines' range of 70 to 87 months imprisonment, PSR ¶ 89, but the Court granted him a downward departure for his substantial assistance to authorities.

On February 23, 2021, the Court granted Ogon's request to postpone his reporting date so that he could get vaccinated and wind down his medical practice. D.E. 36. On May 4, 2021, the Court again granted Ogon's second request to postpone his reporting date so that he could receive his second dose of the COVID vaccination. D.E. 39. Ogon is currently housed at Residential Reentry Management ("RRM") Philadelphia. He is scheduled to be released on June 6, 2023.

### B. The Parties' Arguments

Ogon asks to be released due to his Post Traumatic Stress Disorder ("PTSD") and related mental health issues, long COVID, and family circumstances. Br. at 2-3. Ogon indicates that he suffers from PTSD due to his six months working as a flight surgeon in Kuwait during Operation Iraqi Freedom. *Id.* at 2. He continues that he received a 60% service-connected disability and

2

notes that gunshots from a firing range near FCI Fairton (where he was housed at the time) trigger severe anxiety.[1]  *Id.*  As to long COVID,[2] Ogon indicates that he contracted COVID-19 in January 2021.  *Id.* at 3.  Ogon states that his current symptoms include headaches, forgetfulness, fogginess, loss of concentration and memory, and fatigue.  *Id.*  As to his family, Ogon notes that he has two young children with autism.  *Id.*  One of his children "is on the low functioning end of the autism spectrum."  *Id.* at 5.  Ogon adds that he was extremely helpful with the children and that his spouse cannot shoulder the burden because, among other things, she now must work due to Ogon's lost income.  *Id.* at 5.

In opposition, the Government notes that the Bureau of Prison has been treating Ogon's PTSD but that Ogon has not been compliant with the medication regimen prescribed for him.  *Id.* at 9.  As to long COVID, the Government notes that Ogon has not been diagnosed as suffering from it and that he instead relies on his own reported symptoms.  *Id.* at 10.  The Government adds that, in any event, neither PTSD nor long COVID are sufficient reasons to justify release.  *Id.* at 9-11.  The Government does not contest that his incarceration has been a burden to Ogon's family but notes that courts generally do not grant release on this ground.  *Id.* at 11.  The Government concludes that the Section 3553(a) factors also warrant a denial of Ogon's request.  *Id.* at 12-13.

On August 6, 2021, Ogon wrote to the Warden of FCI Fairton (where he was housed at the time), seeking compassionate release.  The Warden denied the request on December 16, 2021.

---

[1] Given that Ogon has since been transferred to RRM Philadelphia, this fact is no longer pertinent.

[2] *See* "Long COVID or Post-COVID Conditions," Centers for Disease Control and Prevention (Sept. 1, 2022), https://www.cdc.gov/coronavirus/2019-ncov/long-term-effect/index.html.

3

**II.    LEGAL STANDARD**

Following the passage of the First Step Act, Section 3582(c)(1)(A) now reads as follows:

(c) Modification of an imposed term of imprisonment. The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), *after considering the factors set forth in section 3553(a) to the extent that they are applicable*, if it finds that—

(i) *extraordinary and compelling reasons warrant such a reduction*; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and *a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)*;

*and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission*; and

(B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and

(2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A) (emphases added).

The applicable policy statement of the United States Sentencing Commission is found in Section 1B1.13.  U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018) ("U.S. Sentencing Guidelines Manual").  The application notes to the section provide four circumstances that can be considered extraordinary and compelling:  (1) the medical condition of the defendant, (2) the age of the defendant, (3) family circumstances, and (4) other circumstances constituting an extraordinary or compelling reason, either considered alone or in combination with any of the other three stated reasons.  *Id.* cmt. n. 1(A)-(D).  In *United States v. Andrews*, 12 F.4th 255, 259-60 (3d Cir. 2021), the Third Circuit found that the policy statement was not binding on courts but nevertheless found that the statement could provide useful guidance.

Pursuant to Section 3582(c)(1)(A), the Court must also consider the relevant factors listed in 18 U.S.C. § 3553(a).  They include the nature and circumstances of Defendant's offense, the history and characteristics of Defendant, the need for the sentence to provide just punishment, and the need to protect the public from future offenses by Defendant.  *Id.*

### III.   ANALYSIS

Ogon has not met his burden showing that he is entitled to relief.  As to his PTSD and related emotional issues, the record does not support his claims.  In the PSR, Ogon indicated that his mental health was "fair," noting that he was having difficulty with the uncertainty of the outcome of his criminal matter.  PSR ¶ 74.  No mention is made of any prior mental health issue.  Similarly, when discussing his military experience, Ogon did not indicate that he had a disability finding.  *Id.* ¶ 78.  Importantly, his medical records reveal that he sought treatment on February 19, 2021—about a month after the sentencing.  D.E. 40-2 at 92.  Critically, Ogon indicated that he had "no prior psychiatric treatment history[.]"  *Id.*  Moreover, while he mentioned his time in the

service, he primarily attributed his symptoms to being overworked and the recent losses of certain family members. *Id.*

As to his long COVID, the Court similarly agrees that Ogon has not presented proof that he has been diagnosed with such. Moreover, when Ogon requested two extensions of his report date so that he could be fully vaccinated, he never mentioned that he was suffering from any lingering symptoms. In fact, when Ogon arrived at FCI Fairton, he was placed in quarantine. In an effort to be released from quarantine early, Ogon represented that "I am fully vaccinated (Covid 19), *asymptomatic* . . . Do I need to be here for 21 days?" D.E. 42 at 79 (emphasis added).

As to Ogon's family circumstances, the Court is empathetic with the plight of Ogon's children and the strain on his spouse. However, the Court also agrees with the Government that this fact generally does not suffice to warrant the relief sought.

The Court also agrees with the Government that the Section 3553(a) factors militate against release. Given the timing of Ogon's filing, the Court's Section 3553(a) analysis from his sentencing is unquestionably applicable. Ogon was a critical cog in an incredibly large health care fraud conspiracy that was extensive in its scope and length of time. As noted, Ogon owes restitution in excess of $20 million.

## IV.   CONCLUSION

For the foregoing reasons, and for good cause shown,

It is on this 17th day of October 2022 hereby

**ORDERED** that Defendant's motion for compassionate release, D.E. 40, is **DENIED**.

                                                                                      _____
                                                                                      John Michael Vazquez, U.S.D.J.